TOWN OF ST. JOHN, et al., James K. Gilday, Dimple Clarine Shelton, and William E. Wise, Petitioners,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9309–TA–00070.

Tax Court of Indiana.

March 2, 1998.

Order Clarifying Decision April 2, 1998.

Richard A. Waples, Indianapolis.

Thomas M. Atherton, Dutton & Overman, Indianapolis.

James K. Gilday, Wood Touhy Gleason Mercer & Herrin, Indianapolis.

Peter H. Donahoe, Hill Fulwinder McDowell Funk & Matthews, Indianapolis.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis.

Jeffrey A. Modisett, Attorney General by Jon Laramore, Marilyn Meighen, Deputy Attorney General, Indianapolis, for Respondent.

**ORDER AND JUDGMENT ENTRY**

FISHER, Judge.

In its opinion handed down on December 22, 1997, this Court held, inter alia, that the Court will schedule a hearing regarding how long the State Board will be given to bring the state's system of real property taxation into compliance with the Indiana Constitution. In the interim: (1) real property tax assessments shall be made in accordance with the current system, (2) any challenges to real property tax assessments shall be governed by the existing law, and (3) real property tax assessments are not subject to challenge on the ground that the True Tax Value system violates the Indiana Constitution.

*Town of St. John, et al., v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 398–99 (Ind. Tax Ct.1997), *petition for review filed*, Jan. 21, 1998. The Court has heard the argument of counsel and reviewed the memoranda submitted by each party.

Since the Court held that IND. CODE ANN. § 6–1.1–31–6(c) (Burns 1998)[1] is unconstitutional and that the State Board must consider real world values, the Court has been considering a date after which it will no longer permit the State Board to define value artificially by applying its regulations. Taxpayers must be allowed, at some point, to have their tax assessments reviewed and tested against such real world values as the taxpayer may offer as competent evidence in a petition for review. This Court can only review the evidence presented to the State Board and determine whether the decision of the State Board is supported by sufficient evidence, contrary to law, an abuse of discretion or arbitrary and capricious. IND. CODE ANN. § 33–3–5–14 (Burns 1992); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.*, 420 N.E.2d 1324 (Ind.Ct.App.1981). Therefore, such evidence must have been presented to the State Board before this Court may consider such real world evidence in an original tax appeal.[2]

The current statutory plan provides for the general reassessment of all property to be completed March 1, 2001. This general reassessment will begin July 1, 1999. Regulations governing this reassessment will be in place on July 1, 1999.[3] Therefore, it seems to make some sense to permit the present system to exist until assessments beginning March 1, 2001. On the other hand, it seems to be an unreasonable burden to require the taxpayers of Indiana to live under an unconstitutional system for another three years. Taxpayers' rights are being violated, and any remedy that this Court provides should not run against the injured party.[4] *See generally*, 1 DAN B. DOBBS, LAW OF REMEDIES §§ 1.5–1.6 (2d ed.1993).

The State Board, by counsel, acknowledged that it intends to implement changes in the property tax assessment system that incorporate additional market value concepts as permitted by P.L. 6–1997, § 102 (codified at section 6–1.1–31–3 (Burns 1998)). (Resp. Status Report at 1; Resp. Implementation Mem. at 3). Conversely, the petitioners suggest that the Court should require the State Board to report to the Court in thirty days and define what it understands the term property wealth to mean and to explain how equality and uniformity of property are to be measured. The petitioners also argue that the State Board should provide the Court with a timetable "to specify what steps the [State] Board is going to take to bring the state into compliance with the Court's order

1. With respect to assessments of real property, true tax value does not mean fair market value. True tax value is the value determined under the rules of the state board of tax commissioners.
   IND.CODE ANN. 6–1.1–31–6(c).

2. For a cogent discussion on how a change in evidentiary rules may effect litigation *see Craig v. State*, 613 N.E.2d 501, 505 n. 1 (Ind.Ct.App. 1993); *Cf.* IND.CODE ANN. § 4–21.5–5–10 (Burns 1996) (court may refuse to review issue not brought before administrative agency even where issue arose due to intervening change in law).

3. Since the State Board acknowledges that, in terms of ascertainable standards, its regulations "could be improved," (State Bd. Pet. for Review Br. at 9) the court expects such regulations will provide taxpayers with the ascertainable standards that the current regulations lack.

4. The State Board argues that "equitable relief should be narrowly tailored to protect the interests of the parties before the Court." It cites *Indiana High Sch. Athletic Ass'n v. Schafer*, 598 N.E.2d 540, 558 (Ind.Ct.App.1992) and *F.W. Means & Co. v. Carstens*, 428 N.E.2d 251, 260 (Ind.Ct.App.1981) to support this contention. First, this is a case at law, not equity, and any remedy should be tailored as such. Therefore, the cases cited by the State Board are unhelpful at best.

Second, it is important to note exactly what the State Board is trying to do here. It asks this Court to postpone the precedential effect of this Court's latest decision in this case (i.e., postpone the ability of taxpayers to assert the full panoply of their constitutional rights in the area of property taxation) for three years. It seeks to characterize its prayer as "equitable." It couches its prayer in terms of limiting the effect of this Court's decision to the parties before this Court as if those not before this Court (i.e., Indiana taxpayers) are somehow undeserving of the ability to use this Court's decision *prospectively*. The thought that only those taxpayers seeking redress in this case are deserving of the protection of their constitutional rights is, to put it mildly, troubling.

and when those steps are to be completed. The State Board should provide the Court with periodic reports detailing how the steps are being implemented." (Pet'r. Implementation Mem. at 5).

■ The Court's function is to review the final determinations of the State Board in order to ensure their compliance with Indiana law. This Court is not interested in dictating the State Board's tax policy. *See Town of St. John,* 690 N.E.2d at 383 n. 28. It is not this Court's function to supervise and approve, absent an appeal, either rules promulgated by the State Board or statutes enacted by the General Assembly. The question before the Court, then, is whether it would be better to grant some taxpayers the benefit of a system that comes closer to the requirements of a constitutional system (by allowing the inclusion of real world evidence on appeal), or to force all taxpayers, in the name of fairness and uniformity, to labor under an unconstitutional system. The State Board urges the Court to guarantee "uniformity" by forcing taxpayers to hold their rights in abeyance for the next three years. Citing two federal equal protection cases,[5] the State Board argues that "applying two different standards to appeals decided on two different dates exacerbates whatever non-uniformity exists in the current system and may also raise issues of equal protection." The petitioners urge the Court to promote uniformity by allowing taxpayers to assert their constitutional rights as soon as possible. The petitioners recommend more change, rather than less—sooner, rather than later.[6]

■ The only way to achieve uniformity and equality for all taxpayers is to assess all taxpayers under a constitutional system. This cannot be done immediately. However, by allowing the introduction of real world evidence in the interim, at least those taxpayers who challenge their assessments will receive a constitutional result. Any resolution that allows those who petition for review to introduce particular evidence, while denying the use of such evidence to those who do not petition for review does, as the State Board points out, contain an element of non-uniformity. But whenever a court announces a decision that changes or clarifies the law, those who appeal afterwards stand to benefit, while others are foreclosed. A judicial decision that changes the law does not result in an equal protection violation.

The State Board also expressed the concern that "announcing that a new standard would apply as of a certain date would create perverse litigation incentives. Litigants presumably would seek to delay their appeals until the new standard applied." (Resp. Implementation Mem. at 2). This concern arises from the mistaken assumption that taxpayers will be barred from challenging their assessments on the basis of real world evidence unless they wait until that evidence may be introduced in a petition for review. This assumption finds no support in the relevant law. As this Court has repeatedly held, each tax year stands on its own. *See Kent Co. v. State Bd. of Tax Comm'rs,* 685 N.E.2d 1156, 1159 (Ind. Tax Ct. 1997), *petition for review filed,* Nov. 11, 1997; IND. CODE ANN. § 6–1.1–15–1 (Burns 1998). What this means is that taxpayers can challenge their assessments anew each tax year. Therefore, taxpayers could challenge their assessment for one year and then challenge the assessment anew when the rules change. A change in the rules as to what evidence taxpayers may present will not create "perverse litigation incentives." Because there is no incentive for taxpayers to delay their challenges (because of the ability to challenge the assessment for each tax year) the State Board's concern has no basis in reality.

The majority of Indiana taxpayers will find relief only when a constitutional assessment system is in place under valid regulations promulgated by the State Board. It was recognition of this fact that compelled the Court to order implementation of new regulations in both of its Town of St. John opinions. In our legal system, constitutional rights are a categorical imperative, not a goal to be accomplished in the future. However, practical concerns dictate that the State

---

**5.** *Nordlinger v. Hahn,* 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Allegheny Pittsburgh Coal Co. v. County Comm'n,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

**6.** If this were a desegregation case, the state could not postpone desegregating any school until all schools could be completely desegregated. Delaying constitutional treatment of some taxpayers is a vice, not a virtue.

Board be allowed time to "fix the system," so as to avoid chaos and confusion among the various taxing agencies, entities and the taxpayers generally. *See Hellerstein v. Assessor,* 37 N.Y.2d 1, 371 N.Y.S.2d 388, 332 N.E.2d 279 (1975) (courts should not act "so as to cause disorder and confusion in public affairs even though there may be a strict legal right"). Accordingly, this Court ORDERS the State Board to consider all competent real world evidence presented to the State Board by persons filing appeals on or after May 11, 1999. If, and only if, taxpayers introduce real world evidence at the administrative level, will this Court then consider such evidence presented to it.

Pursuant to IND. TRIAL RULE 54(B), this Court retained jurisdiction of this matter in order to determine the deadline for the implementation of a property taxation system that complies with the Indiana Constitution. Having done so, the Court now enters final judgment pursuant to IND.TRIAL RULE 58. Therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this case be REMANDED to the State Board for further consideration of the specific claims of those specific petitioners in this matter who have not been granted relief (such as Mr. Wise). The State Board is directed to consider any real world evidence presented by petitioners in a manner consistent with the December 22, 1997 opinion.

### ORDER OF CLARIFICATION

#### (April 2, 1998)

In its Order and Judgment Entry of March 2, 1998, this Court ordered

the State Board to consider all competent real world evidence presented to the State Board by persons filing appeals on or after May 11, 1999. If, and only if, taxpayers introduce real world evidence at the administrative level, will this Court then consider such evidence presented to it.

*Town of St. John v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1387, 1390 (Ind.Tax Ct.1998) (order).

Petitioners have moved for clarification of this paragraph. Specifically, the Petitioners note that the first quoted sentence is ambiguous. They contend that it is unclear whether the Court is referring to appeals filed with the State Board on or after May 11, 1999, or

if the Court is referring to petitions filed with county boards of review on or after that date.

In its response to Petitioners' motion, the State Board reads the order correctly. The Court's order should be read as focusing on the date, thereby making May 11, 1999 the date for the application of competent real world evidence in new tax appeals, which begin at the county board level. Therefore, only those Form 130 petitions filed with the county boards of review pursuant to IND. CODE ANN. § 6–1.1–14–11 (West Supp.1997) on or after May 11, 1999 may utilize the real world standard. Thereafter, if those taxpayers who file a petition on or after May 11, 1999 seek review of the county board's actions pursuant to IND.CODE ANN. § 6–1.1–15–3 (Form 131), the State Board must also consider any competent real world evidence. The requirement that the State Board consider real world evidence does not apply where the taxpayer's original challenge to his assessment was initiated at the county board level prior to May 11, 1999.

The Court also notes that a Form 133 Petition for Correction of Errors (IND.CODE ANN. § 6–1.1–15–12) can be filed at any time and can be applied retroactively up to three years under IND.CODE ANN. § 6–1.1–26–1(2) (West 1989) (amended 1997). This, however, is not a concern because of the types of errors correctable via a Form 133 Petition. Form 133 Petitions can only be used to correct *objective* errors in the tax duplicate. *See Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113 (Ind.Tax Ct.1997). Such objective errors are correctable pursuant to precise and exact standards. A calculation of the effect of real world evidence on an individual assessment will typically require subjective judgment. Because errors involving subjective judgment are not correctable via a Form 133 Petition, the Court does not foresee any opportunity to apply real world evidence retroactively by using the Form 133 process.

IT IS SO ORDERED.